Belknap
No. 92-419

THE STATE OF NEW HAMPSHIRE

v.

RAUL MARCANO

July 11, 1994

*Jeffrey R. Howard*, attorney general (*Susan G. Morrell*, assistant attorney general, on the brief and orally), for the State.

*James E. Duggan*, chief appellate defender, of Concord, by brief and orally, for the defendant.

HORTON, J.   The defendant, Raul Marcano, was convicted after a jury trial in Superior Court (*O'Neil*, J.) as a drug enterprise leader under RSA 318-B:2, XII (Supp. 1993). On appeal, the defendant argues: (1) that the trial court erred in admitting a non-testifying co-conspirator's guilty plea, acknowledgment of rights form, and conspiracy indictment as evidence against him; (2) that the penalty provisions of the drug enterprise leader (DEL) statute unconstitutionally chilled his right to a jury trial by requiring him to reach a sentencing agreement with the State or to receive a mandatory twenty-five-year sentence; and (3) that the court's admission of the certificate of analysis of alleged drugs without requiring the analyst to testify violated his confrontation rights. We reverse and remand.

The following evidence was adduced at trial. In November 1990, the defendant approached Chris Squeglia and discussed setting up a "safe haven" in Laconia to sell drugs. Squeglia located an apartment, the defendant paid the deposit, and the defendant and Soirlo Perotta set up a cocaine distribution operation there. Squeglia and others acted as "runners," locating customers, taking the customer's money to Perotta at the apartment, and receiving cocaine to bring back to the customer. The defendant or Perotta paid Squeglia and the other "runners" in drugs.

In December 1990, due to police surveillance, the operation moved into Jody Mathieu's apartment at the Village at Winnipesaukee. Mathieu agreed to let John Shew and Perotta move in and sell cocaine from her apartment for $100 a week. The defendant arrived

every few days to replenish their cocaine supply, delivering a sock filled with one to two ounces of cocaine packed in coffee grounds.

In January 1991, the operation relocated again to Three Maples Cottages in Tilton. Shew rented one cottage and the defendant rented another. The defendant paid the rent for both cottages. The operation continued as before. On February 1, 1991, the New Hampshire Drug Task Force and the Belknap County Sheriff's Office executed a warrant to search the cottages. The search resulted in Perotta's arrest and the seizure of seventeen small bags of cocaine. Later that day, the defendant and Reynaldo Lugo drove from Manchester to the Three Maples Cottages carrying cocaine concealed in the engine compartment of Lugo's Nissan 300-Z. When they arrived, the police searched the car, discovered the cocaine, and arrested the defendant and Lugo. The defendant was indicted on one count of violating the DEL statute and on one count of conspiring with Perotta to sell cocaine.

Prior to trial, the defendant moved to dismiss and quash the DEL indictment, alleging, *inter alia*, that the penalty provisions of the DEL statute, contained in RSA 318-B:26, VI, chilled his constitutional right to a jury trial. The trial court denied the defendant's motion. The State entered *nolle prosequi* on the conspiracy indictment, and the conspiracy was treated as a lesser included offense of the DEL indictment.

At trial, the State moved to admit a certificate of analysis to prove that the substance seized from the cottages and Lugo's car was cocaine. The defendant objected to the admission of the certificate, arguing that he had a constitutional right to cross-examine the lab analyst. The certificate was admitted. At the close of its case, the State moved to admit Perotta's guilty plea, acknowledgment of rights form, and conspiracy indictment under New Hampshire Rule of Evidence 804(b)(3). Perotta had asserted his fifth amendment right against self-incrimination, refusing to testify because of possible State and federal drug charges. The court found him to be unavailable to testify under New Hampshire Rule of Evidence 804(a)(1) and admitted the guilty plea, acknowledgment of rights form, and indictment as a statement against penal interest under Rule 804(b)(3).

Perotta had pled guilty to one count of cocaine possession with intent to sell and one count of conspiracy to distribute cocaine. The conspiracy indictment stated: "Soirlo Perotta did agree with Raul Marcano to sell, dispense, offer or give to others narcotic drugs, and in furtherance of said conspiracy, Raul Marcano did rent cottage

number 7 at Three Maples Cottages, Route 3, Tilton, New Hampshire to serve as the place where the crime would be committed." The defendant was convicted as a drug enterprise leader and sentenced to the mandatory minimum of twenty-five to fifty years pursuant to RSA 318-B:26, VI.

On appeal, the defendant contends that the trial court erred in admitting his co-conspirator's guilty plea, acknowledgment of rights form, and indictment as substantive evidence against him. The defendant argues that the admission of the non-testifying co-conspirator's guilty plea was overwhelmingly prejudicial and violated his confrontation rights under the State and Federal Constitutions. We need not address his constitutional claim because we hold that the admission of the non-testifying co-conspirator's guilty plea, acknowledgment of rights form, and conspiracy indictment was impermissibly prejudicial.

██ The heart of the defendant's argument is that the admission of the guilty plea allowed the jury to improperly infer that because his co-conspirator pled guilty, the defendant must also be guilty. The potential for prejudice is overwhelming where evidence of a co-conspirator's conviction is admitted for substantive purposes. The jury may abdicate its duty and "regard the issue of the remaining defendant's guilt as settled and the trial as a mere formality." *United States v. Griffin*, 778 F.2d 707, 711 (11th Cir. 1985). A guilty verdict must be based on the evidence presented against the accused at *his* trial. *Id.* Therefore, we hold that the trial court erred in admitting the non-testifying co-conspirator's guilty plea, acknowledgment of rights form, and indictment as substantive evidence against the defendant. Our position is well supported by other federal and state courts that have considered the admission of such evidence. *See, e.g., United States v. De La Vega*, 913 F.2d 861, 866 (11th Cir. 1990); *United States v. Dworken*, 855 F.2d 12, 30–31 (1st Cir. 1988); *United States v. Hutchings*, 751 F.2d 230, 237 (8th Cir. 1984), *cert. denied*, 474 U.S. 829 (1985); *United States v. King*, 505 F.2d 602, 607 (5th Cir. 1974); *Baker v. United States*, 393 F.2d 604, 614 (9th Cir.), *cert. denied*, 393 U.S. 836 (1968); *State v. Parente*, 460 A.2d 430, 434–35 (R.I. 1983).

The State argues that there was no error in this case because the admitted guilty plea was used only to bolster the credibility of the State's witnesses, citing *United States v. Hutchings*, 751 F.2d 230 (8th Cir. 1984), *cert. denied*, 474 U.S. 829 (1985). In *Hutchings*, a confederate's trial testimony regarding his guilty plea was used to bolster that confederate's credibility. *Id.* at 237. We do not find the State's argument to be persuasive as the facts of this case are easily distinguished from those in *Hutchings*.

■ Where the trial court has erroneously admitted evidence, we must reverse unless the State can show beyond a reasonable doubt that such error did not affect the verdict. *State v. Favreau*, 134 N.H. 336, 342, 592 A.2d 1136, 1140 (1991). In an attempt to meet its burden, the State offers the following arguments: (1) Perotta's guilty plea was admitted without comment by the prosecutor; (2) the only remarks concerning the plea were made fleetingly in the State's closing to bolster the credibility of the State's witnesses; (3) the defendant tactically refused the proper limiting instruction; and (4) the evidence of the guilty plea was cumulative. Although no comment was made when the plea was admitted, we are not convinced beyond a reasonable doubt that the admission of the guilty plea did not affect the verdict. In his closing argument, the prosecutor made the following comments to the jury:

> "Soirlo Perotta did agree with Raul Marcano, this man (pointing) to sell, dispense, offer or give to others narcotic drugs, and in furtherance of said conspiracy, Raul Marcano did rent cottage number seven at Three Maples Cottages, Route 3, Tilton, New Hampshire to serve as the place where the crime would be committed. Mr. Perotta came into the court and subjected himself to criminal liability pleading guilty to that, and as you can read, he signed the document that says I'm pleading guilty because I am guilty in addition to all the other rights that he's advised of at the time of his conviction."

■ The prosecutor's comments regarding the plea served as proof of the precise elements the jury had to deliberate upon. The limiting instruction offered by the trial court, but refused by the defendant, would not have cured the error of the admission of the guilty plea. Nor are we convinced that the guilty plea was cumulative. Admittedly, other witnesses did testify to the defendant's involvement in the drug enterprise. None of their testimony, however, proved the necessary underlying conspiracy element of the DEL indictment as persuasively as the guilty plea of the man the State was trying to prove the defendant conspired with. In addition, each of the State's witnesses had significant credibility problems. Accordingly, we conclude that the trial court's error in admitting the evidence requires reversal. *See State v. Silk*, 138 N.H. 290, 292, 639 A.2d. 243, 245 (1994). Although we reverse because of this error, we will address the defendant's remaining arguments on appeal, as they may arise again in a new trial. *See State v. Cressey*, 137 N.H. 402, 403, 628 A.2d 696, 697 (1993).

The defendant argues that the application of the penalty provisions of the DEL statute, RSA 318-B:26, VI, violated his right to a jury trial pursuant to part I, article 15 of the New Hampshire Constitution and the sixth and fourteenth amendments to the Federal Constitution by requiring him to reach a pre- or post-trial agreement with the State if he wished to avoid a twenty-five-year mandatory minimum. We begin our analysis under part I, article 15, using federal law only to aid our analysis. *See State v. Ball*, 124 N.H. 226, 232, 471 A.2d 347, 351 (1983).

Upon conviction, the penalty provisions of the DEL statute mandate a minimum term of incarceration of twenty-five years and permit a maximum term of life imprisonment. RSA 318-B:26, VI. The statute allows the trial court to accept a lesser sentence only if the State and the defendant enter into a negotiated plea or a post-conviction agreement. *Id.* If the defendant enters a negotiated plea or a post-conviction agreement, the court may not impose a lesser term than agreed upon, but may impose a greater term up to the maximum of life. *Id.* The defendant argues that because the trial judge may only grant the defendant a lesser sentence if he enters a negotiated plea or post-conviction agreement, the DEL penalty provisions are an impermissible burden on his right to a jury trial.

■ Not every encouragement to plead is unconstitutional. *See LaVallee v. Perrin*, 124 N.H. 33, 37, 466 A.2d 932, 935 (1983). We have long recognized "that encouraging a guilty plea by offering substantial benefits in return for the plea is constitutionally permissible." *Id.* An important part of plea negotiations is to encourage guilty pleas by extending leniency in return. *State v. Fraser*, 120 N.H. 117, 122–23, 411 A.2d 1125, 1129 (1980). Thus, although the DEL statute may encourage defendants to plead guilty because a prosecutor is more likely to agree to a lenient sentence before trial, our real inquiry concerns whether this inducement unnecessarily chills the defendant's right to a jury trial. *Cf. Chaffin v. Stynchcombe*, 412 U.S. 17, 30 (1973).

■ The defendant relies on *State v. Johnson*, 134 N.H. 570, 595 A.2d 498 (1991), in which we held that a statute that imposed the death penalty solely when the defendant exercised his right to a jury trial was unconstitutional. There are, however, substantial differences between this case and *Johnson*. "[T]he death penalty, which is unique in its severity and irrevocability, is not involved here." *Corbitt v. New Jersey*, 439 U.S. 212, 217 (1978) (citation and quotation omitted). Further, the defendant is not assured of avoiding a harsher sen-

tence if he pleads guilty. *See LaVallee*, 124 N.H. at 38, 466 A.2d at 935. The trial court is free to impose a greater term of imprisonment than that agreed upon by the parties pursuant to either a negotiated plea or a post-conviction agreement. *See Corbitt*, 439 U.S. at 217. By contrast, in *Johnson* there was no statutory procedure for imposing the death penalty when the defendant pled guilty, and therefore, the defendant faced the death penalty only upon exercising his right to a jury trial. *Id.* at 578–79, 595 A.2d at 503–04. The DEL statute permits plea agreements before and *after* trial so that a defendant who asserts his right to a jury trial is not precluded from receiving a lesser sentence. *Cf. United States v. Jackson*, 390 U.S. 570, 581 (1968). Accordingly, we conclude that the DEL penalty provisions do not infringe upon the defendant's right to a jury trial under part I, article 15. Because the Federal Constitution does not provide the defendant with greater protection, we need not address separately his federal constitutional challenge. *See Corbitt*, 439 U.S. at 217.

The defendant's final argument is that the trial court's admission of the certificate of analysis of the alleged cocaine without requiring the State to produce the analyst as a witness at trial violated the defendant's confrontation rights as held by this court in *State v. Christensen*, 135 N.H. 583, 607 A.2d 952 (1992). The State concedes that this was error.

*Reversed and remanded.*

All concurred.